FILED

2010 MAR 18  AM 11: 38

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABNER HAYNES LISTER,<br><br>　　　　　　　　　Petitioner,<br><br>　v.<br><br>MATTHEW CATE, Secretary, et al.,<br><br>　　　　　　　　　Respondents.[1] | CASE NO. 07cv822 BEN (JMA)<br><br>ORDER AFTER RECONSIDERATION, ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION WITH PREJUDICE<br><br>[Docket No. 14] |

## INTRODUCTION

Before this Court is Petitioner's petition for habeas relief under 28 U.S.C. § 2254 ("Petition"). This Court previously entered an order adopting a Report and Recommendation in this case and denying the Petition, based on Petitioner's failure to file objections to the Report and Recommendation. However, on March 19, 2009, Petitioner filed a motion seeking leave to file an untimely objection to the Report and Recommendation, which the Court granted. For purposes here, the Court construes the March 19th motion as a motion for reconsideration under Federal Rule of Civil Procedure 60(b).

---

[1] The Court substituted Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation, as Respondent on May 29, 2008. *See* 28 U.S.C. § 2242; Rule 2(a) U.S.C. foll. § 2254; *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996); *see also* Fed. R. Civ. P. 25(d).

On reconsideration, for the reasons set forth herein, the Court **ADOPTS** the well-reasoned Report and Recommendation issued by Magistrate Judge Adler and **DENIES WITH PREJUDICE** Petitioner's Petition.

## FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. 28 U.S.C. § 2254(e)(1). The facts as found by the state appellate court are as follows:

On March 1, 2005, San Diego police officers conducted a "buy-bust" operation in downtown San Diego. (Lodgment No. 5 at 2-3.) While undercover on the street, Detective Philip Schneider made eye contact with Petitioner and signals were exchanged indicating Petitioner could furnish cocaine to Schneider. *Id.* Schneider indicated the amount of cocaine he wanted and Petitioner told Schneider that Schneider must go down the block to get it from a "sister girl." *Id.* Schneider gave money to the Petitioner and Petitioner gave Schneider a small baggie of marijuana as collateral until Schneider could retrieve the cocaine. *Id.* After Schneider received the cocaine, Petitioner was arrested. *Id.* During the arrest, Petitioner told the police that his name was Calvin Smith. *Id.*

## PROCEDURAL BACKGROUND

The San Diego County District Attorney's Office filed an Information charging Petitioner with selling and furnishing a controlled substance (cocaine); possession of a controlled substance; and giving false information to a peace officer. (CT at 1-3.) The Information further alleged that Petitioner had suffered numerous probation denial priors and two prison priors. (CT at 3-4.) A jury found Petitioner guilty of selling or furnishing a controlled substance and giving false information to a peace officer. (CT at 195-96.) The court dismissed the lesser included offense of possession. (CT at 146.) Petitioner subsequently admitted the alleged priors and was sentenced to six (6) years imprisonment. (CT at 194, 201.)

On June 1, 2006, Petitioner appealed his conviction and sentence to the California Court of Appeals, which affirmed. (Lodgment Nos. 3, 4, 5.)

On February 7, 2007, Petitioner filed a petition for review with the California Supreme Court. (Lodgment No. 6.) The petition was denied without comment. (Lodgment No. 7.)

On May 7, 2007, Petitioner filed a petition for habeas relief under 28 U.S.C. § 2254 in this Court. (Docket No. 1.) As currently stated, the Petition alleges Petitioner was denied his constitutional right to effective assistance of counsel (Ground One) and right to trial by an impartial jury (Ground Two). (Docket Nos. 8, 9.) Respondents filed an Answer, and Petitioner filed a Traverse. (Docket Nos 12, 13.)

On April 9, 2008, Magistrate Judge Jan M. Adler issued a Report and Recommendation, recommending that the Petition be denied with prejudice. Despite receiving an extension of time, Petitioner failed to file objections to the Report and Recommendation.

On March 6, 2009, the Court, therefore, entered an order adopting the Report and Recommendation and denying with prejudice Petitioner's Petition. (Docket No. 35.)

On March 19, 2009, Petitioner filed a motion seeking leave to file an untimely objection to the Report and Recommendation, which this Court granted. For purposes here, the Court construes the motion as a motion for reconsideration under Federal Rule of Civil Procedure 60(b).

On May 4, 2009, pursuant to the Court's instruction, Petitioner filed his objection to the Report and Recommendation. (Docket No. 35.) On June 8, 2009, Petitioner filed a supplement[2] to his May 4th objections. (Docket No. 38.) Respondents did not file a reply.

## STANDARD OF REVIEW

The Petition is currently before this Court based on a motion for reconsideration that this Court granted on April 6, 2009. (Docket No. 33.) After granting reconsideration, a court reviews the underlying claims using the same legal standards previously employed by the court. *Charter Tp. Of Muskegon v. City of Muskegon*, 303 F.3d 755, 762 (6th Cir. 2002) (reconsideration is a continuation of the original proceeding). The Court applies those standards here.

To present a cognizable federal habeas corpus claim, a state prisoner must allege that his conviction was obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner must allege that the state court violated his or her federal constitutional rights. *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991).

---

[2] The June 8th document is titled "Amendment;" however, the language of the document demonstrates it is not intended to replace the May 4th objections, but rather is meant to be an addition to the May 4th objections. Therefore, the Court views the June 8th document as a supplement, rather than an amendment, to Petitioner's May 4th objections.

- 3 -                                                                 07cv0822

In *Lockyer v Andrade*, 538 U.S. 63 (2003), the United States Supreme Court stated a federal habeas court is not required "to adopt any one methodology in deciding the only question that matters under § 2254 (d)(1)–whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 71 (citation omitted). A federal court is not, therefore, required to review the state court decision de novo. *Id.* Rather, a federal court can proceed directly to the reasonableness analysis under § 2254(d)(1). *Id.* Additionally, a state court need not cite Supreme Court precedent when resolving claims presented on direct or collateral review. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

## DISCUSSION

### I. INEFFECTIVE ASSISTANCE OF COUNSEL (GROUND ONE)

Petitioner argues that habeas relief must be granted because he was denied his Sixth Amendment right to effective assistance of counsel when the State Court denied his motions to appoint new counsel. The last state court to review this claim was the California Supreme Court. However, that court denied the claim without comment. The next highest court, i.e., the California Court of Appeals, was not presented with this claim;[3] therefore, this Court must conduct an independent review of the record to determine whether the State Court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), overruled on other grounds by *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

To establish ineffective assistance, Petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). First, Petitioner must show that the attorney's performance was deficient. *Id.* at 687. Second,

---

[3] Petitioner presents his claim in the federal petition differently than he did in his direct appeal in State Court. In State Court, Petitioner claimed on appeal that the trial court erred in denying his motions for new counsel. (Lodgment Nos. 3, 6.) In this Court, Petitioner directly asserts a violation of his Sixth Amendment right to effective assistance of counsel. (Petition, pg. 7.) Because the State Court did not analyze Petitioner's claim on appeal using law pertaining to ineffective assistance of counsel claims, the California Court of Appeals' opinion does not furnish a basis for disposition of Petitioner's claim as presented in this Court. Therefore, this Court must conduct an independent review of the record.

"the [petitioner] must show that the deficient performance prejudiced the defense." *Id.* In other words, "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Both prongs must be satisfied.

The Ninth Circuit authority has stated that "to compel [an accused] to go to trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of counsel." *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970). However, this does not mean that a court must provide a defendant with an attorney of his or her choice. *Id.* Rather, a court presented with a motion for new counsel must determine whether the alleged conflict prevents effective assistance of counsel. *Schell v. Witek*, 218 F.3d 1017, 1025-26 (9th Cir. 2000).

Here, Petitioner made two separate motions requesting that the trial court appoint new counsel. Petitioner's claim for ineffective assistance of counsel is based on the second motion, which was heard by the State Court on June 30, 2005. (Pet., pgs. 6-9.) Under this motion, Petitioner claimed his attorney failed to obtain a plea bargain and Petitioner "disagree[d] with counsel on a lot of things." (2 RT at 101.) In response, at the hearing, Petitioner's counsel explained he attempted to negotiate a plea bargain, but the District Attorney's office would not offer a deal that Petitioner would accept. (2 RT at 108-09.) Counsel further agreed with Petitioner that communications between the two had broken down and, in fact, counsel was limiting the number of calls he would accept from Petitioner because of Petitioner's harassment and abuse. (2 RT at 109-10.)

The State Court subsequently denied Petitioner's motion, noting that there appeared to be abusive behavior from Petitioner but there was no indication that Petitioner's counsel was unwilling to represent Petitioner or that counsel had committed misconduct. (2 RT at 109-10.) In his habeas petition and Objection to Report and Recommendation, Petitioner contests the State Court's finding that Petitioner acted abusively and that his counsel was otherwise willing and able to represent him at trial. (Pet., pgs. 6-9; Obj. R&R (Docket No. 35), pg. 2.)

The Sixth Amendment right to effective assistance of counsel does not guarantee a "meaningful relationship between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). The Ninth Circuit has stated that "[a] defendant's refusal to cooperate with appointed counsel

is no basis for a claim of inadequate representation." *Plumlee v. Masto*, 512 F.3d 1204, 1207 (2008). The critical issue is whether the alleged conflict "prevented effective assistance of counsel" or resulted in "an attorney-client relationship that fell short of that required by the Sixth Amendment." *Id.* at 1026. Under *Strickland*, this means Petitioner must show the conflict was so substantial that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Here, the State Court found that, despite the apparent conflict, Petitioner's counsel was able to develop a reasonable trial strategy and effectively represent Petitioner at trial. (Lodgment No. 5 at 7.) Even if Petitioner is correct in arguing that "[t]he courts have no proof" that Petitioner was abusive (Obj. R&R (Docket No. 35), pg. 2), such facts would not defeat the State Court's finding that the alleged breakdown in communication did not result in ineffective assistance of counsel or prejudice the outcome of Petitioner's case. Rather, an independent review of the record shows that Petitioner failed to satisfy the elements necessary to prove ineffective assistance of counsel, namely Petitioner failed to show that any conflict between Petitioner and his counsel resulted in representation that was objectively unreasonable. Thus, the State Court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner's claim is denied.

## II.     RIGHT TO TRIAL BY IMPARTIAL JURY (GROUND TWO)

Petitioner next claims his Sixth Amendment right to a trial by impartial jury was violated when the trial court refused to grant him a new trial after one of the jurors engaged in misconduct. (Pet., pgs. 11-12; Obj. R&R (Docket No. 35), pg. 2.) Specifically, Petitioner claims one of the jurors "conducted Internet Research and misinformed all the other jurors of the possible penalties in this case." *Id.* Petitioner claims that, had the jurors known of the true possible penalties (i.e., up to 10 years of imprisonment, rather than 3-5 years, according to Petitioner), the jury would not have convicted him. (Suppl. Obj. R&R (Docket No. 38), pg. 2.) The last state court to issue a reasoned opinion on this issue was the California Court of Appeals. Therefore, this Court analyzes Petitioner's claim by reviewing that opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).

### A.     Sixth Amendment Right to Trial by Impartial Jury

The alleged misconduct in this case occurred during jury deliberations. Shortly after deliberations commenced, the trial court received a note from the jury stating one of the jurors had conducted impermissible online research regarding possible penalties for the charges involved in the

case. (CT at 192, 5 RT at 408). The trial court responded by conducting an interview with each juror to determine the circumstances leading to the jury's note and to determine whether each juror could be fair and impartial. (5 RT at 408). Finding that Juror No. 2 did, in fact, research penalties on-line, the trial court excused him and replaced him with an alternate. (5 RT at 416.) The trial court questioned the remaining jurors and found them all to be capable of fair and impartial deliberations. (5 RT at 432.) The trial court also denied a motion for mistrial by Petitioner's counsel, stating the court was "reassured by the emphatic nature of each and every response that they could start all over... and absolutely disregard the information from the one juror." (6 RT at 439-440.) Petitioner disputes the trial court's finding that these remaining jurors could continue deliberating fairly and impartially. (Suppl. Obj. R&R (Docket No. 38), pg. 2.)

A criminal defendant's right to a fair trial by a panel of impartial jurors is one of the most priceless safeguards of individual liberty and is a basic requirement of due process. *Irvin v. Dowd*, 366 U.S. 717, 721-22 (1961). The United States Supreme Court has stated, "[i]mpartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests..." *United States v. Wood*, 299 U.S. 123, 145-46 (1936). For this reason, trial courts are given significant discretion in determining whether a jury can be impartial, and such findings of impartiality will be overturned only when prejudice is manifest." *Irvin*, 366 U.S. at 723 (citing *Reynolds v. United States*, 98 U.S. 145, 156 (1878)).

The right to a trial by impartial jury "means a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Determinations regarding a juror's impartiality may be made, like they were in this case, at a hearing in which the trial court assesses the impact of the information wrongfully obtained and whether it was prejudicial. *Remmer v. United States*, 347 U.S. 227, 229-30 (1954); *Smith*, 455 U.S. at 217.

Here, the trial court applied the *Smith* standard by individually questioning each juror about the information received and confirming that he or she could deliberate "only on the evidence" presented at trial. (5 RT at 408-432.) *See Smith*, 455 U.S. at 217. In speaking to the jurors individually, the court was able to adequately assess the impact of the information and determine that the jury could decide the case fairly and impartially. (5 RT at 432.) As the Report and

Recommendation notes, the jurors were also given the weekend to contemplate their responses to the court's questions. (5 RT at 432; 6 RT at 442.) Additionally, after replacing the juror who conducted impermissible research, the trial court re-instructed the jury about the importance of not considering penalty and punishment, and confirmed with the jurors that they would be able to disregard any extraneous information and decide the case fairly and impartially. (6 RT at 442-43.)

Petitioner argues the trial court should not have based its determination that the remaining jurors could be impartial on the jurors' own statements and reassurances. (Obj. R&R (Docket No. 35), pg. 2; Pet., pg. 12.) In his Objection to the Report and Recommendation, Petitioner also argues the trial court erred by not informing the jurors of the correct penalty possibilities. (Obj. R&R (Docket No. 35), pg. 2; Suppl. Obj. R&R (Docket No. 38), pg. 2.)

In hearings regarding juror impartiality, juror testimony should not be viewed as inherently suspect because "one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter." *Smith*, 455 U.S. at 217, n. 7, quoting *Dennis v. United States*, 339 U.S. 162 (1950). Here, the California Court of Appeal denied Petitioner's claim by employing a rationale similar to that used by the United States Supreme Court in setting forth the principles for determining juror impartiality. Specifically, the Court of Appeal borrowed language from the United States Supreme Court's opinion in *Smith* when defining an impartial jury as "one in which no member has been improperly influenced and every member is 'capable and willing to decide the case solely on the evidence before it.'" (Lodgment No. 5, at 10.) *Smith*, 455 U.S. at 217. Also similar to *Smith*, the Court of Appeal noted "it is impossible to shield jurors from every contact that may influence their vote." (Lodgment No. 5, at 11.) *Smith*, 455 U.S. at 217. Indeed, trial courts are given significant discretion in determining whether a jury can be impartial, and a state court's findings regarding juror impartiality are presumptively correct. *Smith*, 455 U.S. at 218.

This Court finds that the Court of Appeal reasonably applied the *Smith* standard in denying Petitioner's claim that he was deprived his constitutional right to a fair trial by impartial jury. The trial court's re-instruction to the jury about the importance of not considering penalty and punishment also corrected any potential harm caused by the jury's receipt of purportedly false penalty information. (6

07cv0822

1  RT at 442-43.) Therefore, the Court finds that the State Court's denial of Petitioner's claim was
2  neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Thus,
3  Petitioner's claim is denied.

4            **B.**        **Harmless Error**

5            The Court denies Petitioner's claim for the additional and independent reason that any error
6  committed by the State Court was harmless. In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the
7  United States Supreme Court stated, "the standard for determining whether habeas relief must be
8  granted is whether the ... error had substantial and injurious effect or influence in determining the
9  jury's verdict." *Id.* at 623. The Ninth Circuit has recognized the following factors in determining
10 whether a jury's exposure to extrinsic information, such as the information in this case, substantially
11 and injuriously affected the jury's verdict:

> (1) whether the extrinsic material was actually received, and if so, how;
> (2) the length of time it was available to the jury; (3) the extent to
> which the jury discussed and considered it; (4) whether the material
> was introduced before a verdict was reached, and if so, at what point in
> the deliberations it was introduced; and (5) any other matters which
> may bear on the issue...

16 *Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir. 1995). Great weight is also placed on the nature of the
17 information received. *Id.* at 612.

18           Applying these factors here, the Court notes that the extrinsic material was actually received;
19 however, the jury immediately notified the trial court and the trial court immediately addressed the
20 issue and rectified the matter. The record shows that the trial court was notified of the material
21 approximately five minutes after the information was received. (5 RT at 412.) The record also shows
22 that some of the jurors did not even hear the substance of the material impermissibly received. (5 RT
23 at 410-12.) Additionally, the material was received with sufficient time before the verdict for the trial
24 court to rectify the issue by replacing the juror who found the information and re-instructing the jury
25 as whole to disregard the information. (5 RT at 411, 433, 442.) The trial court also interviewed each
26 juror to determine and confirm that he or she could be impartial and be willing and able to disregard
27 the extrinsic information. (5 RT at 432.) Lastly, the Court notes that the information received was not
28 inherently prejudicial to the Petitioner, as the information did not relate to a material issue in the jury's

determination of Petitioner's liability. *Lawson,* 60 F.3d at 612-13; *accord United States v. Bagnariol,* 665 F.2d 877, 884-87 (9th Cir. 1981). The dismissal of the juror who conducted the investigation further supports the State Court's finding that the extrinsic information did not substantially and injuriously affect the jury's verdict. (5 RT at 409-32.) *Brecht,* 507 U.S. at 623.

Accordingly, the Court finds that the State Court properly addressed each of the *Lawson* factors and the record supports the finding that the information received by the jury did not substantially and injuriously effect or influence the jury's verdict. *Id.* Thus, the State Court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, *Brecht*.

Accordingly, on reconsideration, the Court **DENIES** Petitioner's Petition.

## CONCLUSION

For the reasons set forth above, Petitioner's Petition for Writ of Habeas Corpus is **DENIED WITH PREJUDICE**. The Clerk of the Court is directed to enter a judgment in accordance with this Order, and to close the file. The Clerk of the Court is further directed to serve by mail a copy of this Order and the Judgment on Petitioner to his address of record.

Date: March /8 , 2010

Hon. Roger T. Benitez
Judge, United States District Court